UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

OCTAVIO HERNANDEZ

                        Petitioner,                          10 Civ. 6582(KMK)(PED)

        - *against* -                                        <u>REPORT AND</u>
                                                             <u>RECOMMENDATION</u>
SUPERINTENDENT KHAHAIFA
*Orleans Correctional Facility*

                        Respondent.
-------------------------------------------------------x

TO: THE HONORABLE JUDGE KENNETH M. KARAS
    UNITED STATES DISTRICT JUDGE


## I. INTRODUCTION

        *Pro se* petitioner Octavio Hernandez ("petitioner"), presently incarcerated at Riverview

Correctional Facility,[1] seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 from his

August 12, 2004 conviction in Sullivan County Court (LaBuda, J.).  Petitioner pled guilty to one

count of sexual abuse in the first degree and one count of criminal possession of a weapon in the

third degree.  He was sentenced to a determinate term of seven years for first degree sexual

abuse, a concurrent term of one to three years for third degree criminal possession of a weapon,

and three years post-release supervision.  In his petition, petitioner contends that:  (1) defense

counsel was ineffective due to an alleged conflict of interest, (2) defense counsel was ineffective

because he failed to suppress an unlicensed handgun found by police officers during a search of

petitioner's home, and (3) defense counsel was ineffective because he failed to object to

petitioner's sentence, which petitioner claims was illegally imposed by the court.  The petition

---

[1] When petitioner filed his writ of *habeas corpus* he was incarcerated at Orleans Correctional
Facility in Albion, New York.  However, petitioner has since been transferred to Riverview
Correctional Facility in Ogdensburg, New York.  Docket # 8 (Pet. Mem.).

comes before me pursuant to an order of reference dated September 13, 2010.  Docket # 5.  For the reasons set forth below, I respectfully recommend that this petition be **DISMISSED as time-barred.**

## II. BACKGROUND

### A.     Facts

On December 13, 2003, a grand jury indicted petitioner for the crimes of:  (1) rape in the first degree, (2) rape in the third degree, (3) sexual abuse in the first degree, (4) sexual abuse in the third degree, (5) unlawful imprisonment in the first degree, (6) unlawful imprisonment in the second degree, (7) criminal possession of a weapon in the third degree, (8) criminal possession of a weapon in the fourth degree, (9) endangering the welfare of a child, (10) menacing in the second degree, and (11) unlawfully dealing with a child.  The charges arose from a December 2, 2003 incident, wherein petitioner was accused of forcing a sixteen year old girl,[2] whom he had hired to clean his home in South Fallsburg, New York, to have sexual intercourse with him. Petitioner was also accused of holding the girl in his home against her will, and of possessing an unlicensed revolver at the time of the incident.

On June 18, 2004, petitioner appeared before Judge LaBuda in Sullivan County Court and pled guilty to first degree sexual abuse[3] and third degree criminal possession of a weapon,[4]

---

[2] The victim's name is withheld pursuant to N.Y. Civ. Rights Law § 50-b.

[3] Under New York Penal Law § 130.65(1), "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact: (1) By forcible compulsion." N.Y. Penal Law § 130.65(1).

[4] At the time of petitioner's conviction, under New York Penal Law § 265.02(1), "[a] person [wa]s guilty of criminal possession of a weapon in the third degree when: (1) He commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one ... of section 265.01, and has been previously convicted of any crime."  N.Y. Penal Law § 265.02(1).

[footnote continued on following page]

2

in full satisfaction of the remaining nine counts of the indictment.  As part of the plea agreement, petitioner waived his right to appeal his convictions and sentence.  On August 12, 2004, Judge LaBuda sentenced petitioner to a determinate term of seven years for first degree sexual abuse and an indeterminate term of one to three years for third degree criminal possession of a weapon. The court also sentenced petitioner to three years post-release supervision.

### B.    Post-Conviction Proceedings

The sentencing court, through counsel, gave petitioner a notice of intention with respect to appeal, despite petitioner's waiver of his right to appeal pursuant to the plea agreement. Petitioner did not sign this notice, nor did he indicate on the notice whether or not he intended to appeal his convictions.  In fact, petitioner did not appeal his convictions to the Appellate Division.  However, on April 21, 2008 – nearly four years after he was sentenced – petitioner, acting *pro se*, filed an application in the Appellate Division, Third Department, to have his notice of intention with respect to appeal treated as notice of appeal.  On June 19, 2008, the Appellate Division denied petitioner's application.

On April 2, 2008, petitioner, again acting *pro se*, filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, claiming ineffective assistance of counsel.  Petitioner claimed that his trial counsel was ineffective because counsel chose not to have certain DNA evidence independently tested, and because counsel did not move to suppress

---

[footnote continued from following page]

At the time of petitioner's conviction, under section 265.01(1), "[a] person [wa]s guilty of criminal possession of a weapon in the fourth degree when: (1) He or she possesses any firearm . . . ." N.Y. Penal Law § 265.01(1).  Petitioner had been previously convicted of the crime of first degree reckless endangerment in 1991.

3

the DNA evidence.  On July 7, 2008, the Sullivan County Court denied petitioner's § 440.10 motion.  Petitioner did not seek leave to appeal.

On September 16, 2009, petitioner, acting *pro se*, filed a motion to vacate his sentences pursuant to New York Criminal Procedure Law  § 440.20, claiming that his sentences were "unauthorized," "illegally imposed," and "invalid."  On December 30, 2009, the Sullivan County Court denied petitioner's § 440.20 motion.  On February 2, 2010, petitioner filed a notice of appeal and an application for leave to appeal the denial of his § 440.20 motion.  In a supporting affidavit, petitioner argued for the first time that his attorney had a conflict of interest because he "also represented the Town of Monticello."  The Appellate Division, Third Department, denied petitioner's application on March 3, 2010.  Petitioner then filed a motion for reargument on March 22, 2010.  In this motion, petitioner repeated his conflict of interest argument, now asserting that his defense attorney was simultaneously employed by the Sullivan County Attorney's Office.[5]  On May 5, 2010, the Appellate Division denied petitioner's application for reargument.

On May 24, 2010, petitioner sought leave to appeal to the New York Court of Appeals on all of the issues previously raised in his post-conviction motions.  On June 23, 2010, the Court of Appeals denied petitioner's application.

C.      **Habeas Corpus Proceedings**

On or around August 3, 2010, petitioner, acting *pro se*, filed the current petition for a writ of *habeas corpus* in the United States District Court, Western District of New York.  His petition was transferred to the Southern District of New York on September 7, 2010.  Docket # 2.  In the

---

[5] Respondent apparently concedes that the defense attorney was also a "part time County Attorney."  Docket # 9 (Resp't's Answer ¶ 20).

petition, he asserts that: (1) defense counsel was ineffective due to an alleged conflict of interest, which violated petitioner's constitutional rights to due process and a fair hearing, (2) defense counsel was ineffective because he failed to suppress evidence, including the unlicensed handgun, found by police officers during what petitioner claims was an unlawful search of his home, and (3) defense counsel was ineffective because he failed to object to petitioner's sentence, which petitioner claims was illegally imposed by the court. Respondent argues that petitioner's claims are time-barred because petitioner failed to file his petition within the one-year limitations period. Docket # 9. Petitioner has submitted a reply that addresses the merits but not the timeliness issue. Docket # 10.

## III. DISCUSSION

### A.    Applicable Law

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (*citing Reed v. Farley*, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

### 1.    Timeliness Requirement

A federal *habeas corpus* petition is subject to the AEDPA's strict, one-year statute of limitations. *See* 28 U.S.C. § 2244(d). The statute provides four different potential starting

5

points for the limitations period, and specifies that the latest of these shall apply. *See id.* §

2244(d)(1).  Under the statute, the limitation period is tolled only during the pendency of a

properly filed application for State post-conviction relief, or other collateral review, with respect

to the judgment to be challenged by the petition. *See id.* § 2244(d)(2).  The statute reads as

follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct
>> review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by
>> State action in violation of the Constitution or laws of the United States is
>> removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially
>> recognized by the Supreme Court, if the right has been newly recognized by
>> the Supreme Court and made retroactively applicable to cases on collateral
>> review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented
>> could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction
> or other collateral review with respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a

petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstances stood in his way' and prevented timely filing." *Holland v. Florida*,

130 S. Ct. 2549, 2262 (2010) (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  In the

Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," *Smith v.*

*McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have

"prevented [the petitioner] from filing his petition on time." *Valverde v. Stinson*, 224 F.3d 129,

134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable

tolling must "demonstrate a causal relationship between the extraordinary circumstances on

which the claim for equitable tolling rests and the lateness of his filing – a demonstration that

cannot be made if the petitioner, acting with reasonable diligence, could have filed on time

notwithstanding the extraordinary circumstances." *Valverde*, 224 F.3d at 134.

###    2.    Exhaustion Requirement

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his

claims in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); *id.* § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented").  The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claims. *Rose v. Lundy*, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." *Petrucelli v. Coombe*, 735 F.2d 684, 687 (2d Cir. 1984) (*citing Smith v. Phillips*, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court, absent a showing of cause and prejudice, or a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.

*See, e.g., Reyes*, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," *Harris v. Reed*, 489 U.S. 255, 262 (1989), or "actual innocence," *Schlup v. Delo*, 513 U.S. 298 (1995)), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Padilla v. Keane*, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.   **Procedural Default**

Even where an exhausted and timely habeas claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. *Harris*, 489 U.S. at 262; *see also Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "'fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (*citing Coleman*, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (*quoting Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

9

### 4.      AEDPA Standard of Review

Before a federal court can determine whether a petitioner is entitled to federal habeas

relief, the court must determine the proper standard of review under the AEDPA for each of the

petitioner's claims.  28 U.S.C. § 2254(d)(1)-(2).  This statute "modifie[d] the role of federal

habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more

exacting standard of review.  *Williams v. Taylor*, 529 U.S. 362, 402 (2000).  For petitions filed

after the AEDPA became effective, federal courts must apply the following standard to cases in

which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim - -
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when

the state court has both adjudicated the federal claim "on the merits," and reduced its disposition

to judgment.  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at

a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it]

decides a case differently than [the Supreme Court] on a set of materially indistinguishable

facts."  *Williams*, 529 U.S. at 413.  A decision involves an "unreasonable application" of

Supreme Court precedent if the state court "identifies the correct governing legal rule from the

Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

Under the second prong of the AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); *see Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.**     **Analysis**

**1.**     **The Petition is Barred by the AEDPA's Statute of Limitations**

Respondent claims that the petition is untimely because petitioner failed to file his petition within the AEDPA's one year limitations period. As discussed below, petitioner did not file the current *habeas* petition until almost five years after the expiration of the limitations period. Furthermore, there is no statutory or equitable basis for tolling the limitations period. Thus, petitioner's *habeas* petition is time-barred and I do not reach the merits of his claims.

**a.**     **The Petition is Untimely**

Under 28 U.S.C. § 2244(d)(1), as amended by the AEDPA, petitioner was required to file his federal *habeas corpus* petition within one year of the date on which his conviction became final. 28 U.S.C. § 2244(d)(1)(A). Since petitioner did not appeal his conviction to the Appellate Division, his conviction became final on September 11, 2004, thirty days after he was sentenced, when the time for filing notice of appeal expired. *See* N.Y. Crim. Proc. Law § 460.10(1)(a); *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2000) (stating that the one-year limitations period begins to run "when [a petitioner's] time for filing a notice of appeal from his judgment of

11

conviction expire[s]"). Thus, petitioner had until September 11, 2005 to file his federal *habeas* petition. However, petitioner did not file the current petition until August 3, 2010, almost five years after the expiration of the one-year limitations period.

Reading petitioner's submissions liberally, I have also considered the potential application of 28 U.S.C. § 2244(d)(1)(D), which fixes as an alternative starting point for the AEDPA limitations period "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Although petitioner has not explained when or how it came to his attention that his trial attorney was affiliated with the Sullivan County Attorney's Office, the file contains a copy of a letter, dated February 15, 2010, from one John Wombacher, responding to petitioner's "request for information on Marvin Newberg and his association with the Sullivan County Attorney's office at the time her was representing" petitioner and enclosing printed web pages from a 2004 Directory of Sullivan County Officials identifying Mr. Newberg as an Assistant County Attorney. (Resp't.'s Ex. P, annexed as "Exhibit E".)

Even assuming that petitioner did not learn of his attorney's status as a part-time county official until 2010, however, the law is clear that the AEDPA limitations period runs from the date on which the facts supporting the claim could have been discovered "through the exercise of due diligence . . . regardless of whether petitioner actually discovers the relevant facts at a later date." *Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000) (citation and internal quotations omitted). The 2004 County Directory petitioner consulted demonstrates that information about Newberg's status was readily available and could have been discovered through the exercise of due diligence. *See, e.g., Schleuter v. Varner*, 384 F.3d 69, 73-75 (3d Cir. 2004) (concluding that petitioner exercising due diligence would have discovered that his part-time public defender was

12

a "civil law partner" with an assistant district attorney because it was common knowledge in the legal community that the two shared office space). Petitioner has not suggested any reason why he could not have discovered his attorney's affiliation years earlier.

**b.      Petitioner is Not Entitled to Statutory Tolling**

Under 28 U.S.C. § 2244(d)(2), the time during which an application for post-conviction review is pending does not count toward the one-year limitations period. However, this provision applies only when the post-conviction application is made within the one-year limitations period. It "does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *see also Scarola v. Kelly*, No. 99 Civ. 4704, 2001 WL 849449, at *3 (S.D.N.Y. July 27, 2001)[6] ("[T]olling extends the time to file a habeas petition by delaying the expiration of the statutory period, but has no effect once the period has expired."); *Cuevas v. New York*, No. 01 Civ. 2550 (RWS), 2002 WL 206985 (S.D.N.Y. Feb. 11, 2002) (finding that a post-conviction motion filed eighteen months after the expiration of the statutory period did not restart the one-year limitations period); *Bowman v. Walsh*, No. 07 CV 3586 (BMC), 2007 WL 2815711 (E.D.N.Y. Sept. 25, 2007) (finding that a post-conviction motion filed over three years after the expiration of the statutory period did not restart the one-year limitations period). Here, petitioner did not file his first post-conviction motion until April 2, 2008, well after the one-year limitations period expired on September 11, 2005. Thus, the time during which petitioner's post-conviction motions were pending in state court did not toll the limitations period and petitioner's *habeas* petition is therefore untimely.

---

[6] Unreported cases are being sent to *pro se* petitioner. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

13

**c.**     **Petitioner is Not Entitled to Equitable Tolling**

Before recommending an outright dismissal of petitioner's *habeas* petition, however, I must consider whether there is any basis for equitable tolling of the one-year limitations period during the interval between the date on which petitioner's conviction became final and the date on which petitioner filed the instant petition. A court may equitably toll the AEDPA's one-year limitations period if a petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Artis v. Huliahn*, No. 09 Civ. 9893 (BSJ)(JCF), 2010 WL 4668926, at *3 (S.D.N.Y. Nov. 12, 2010). Petitioner must also demonstrate a causal relationship between the extraordinary circumstances and the lateness of his filing. *Valverde*, 224 F.3d at 134. Such a showing cannot be made "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id.* Furthermore when the time period sought to be tolled is a lengthy one, as it is here, a petitioner's burden is particularly high. *See Cross v. McGinnis*, No. 05 Civ. 504 (PAC), 2006 WL 1788955, at *4 (S.D.N.Y. June 28, 2006) ("Given the seven-and-a-half years which [petitioner] seeks to toll, his burden to show that the circumstances were indeed extraordinary and that he acted with reasonable diligence throughout this period is extremely high."); *Mateos v. West*, 357 F. Supp. 2d 572, 577 (E.D.N.Y. 2005) ("As the petitioner seeks to equitably toll 1318 days of the limitations period, the petitioner's burden to demonstrate he acted with reasonable diligence throughout this entire period is particularly high.").

"It is exceedingly rare for courts in th[e] [Second] Circuit to find that [extraordinary] circumstances exist." *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 331 (W.D.N.Y. 2005). The term "extraordinary" refers not to the uniqueness of the petitioner's situation, but to the severity

14

of the obstacle preventing the petitioner from filing in a timely fashion. *Bolarinwa v. Williams*, 593 F.3d 226, 231-32 (2d. Cir. 2010).  Courts in the Second Circuit have found extraordinary circumstances sufficient to justify equitable tolling in a limited number of circumstances, such as in cases involving particularly egregious attorney error, *see Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003), in cases where prison officials intentionally obstruct a petitioner's efforts to file a *habeas* petition by confiscating legal papers, *see Valverde*, 224 F.3d at 133-34, and in cases where a petitioner has particularly severe mental health problems. *See Benn v. Greiner*, 275 F. Supp. 2d 371, 374 (E.D.N.Y. 2003).  However, "the [everyday] difficulties attendant in prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances." *Corrigan*, 371 F. Supp. 2d at 330. Furthermore, *pro se* status or "a lack of legal knowledge cannot excuse a delay in filing a petition." *Wilson v. Bennett*, 188 F. Supp. 2d 347, 354 (S.D.N.Y. 2002); *see also Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) (finding that "*pro se* status does not in itself constitute an extraordinary circumstance meriting tolling").

Petitioner here has failed to make any demonstration of extraordinary circumstances that prevented him from filing his *habeas* petition within the one-year limitations period.  In fact, petitioner does not provide any explanation for his failure to comply with the statute of limitations, nor does he even address the issue of timeliness in his petition or affidavit in opposition to respondent's answer.  Moreover, even if petitioner had demonstrated a sufficiently extraordinary circumstance here, his lack of reasonable diligence in pursuing his claims would prevent this Court from equitably tolling the limitations period.  Petitioner waited over three and one-half years to attempt to appeal his conviction and to file his first state post-conviction

15

motion, and almost five years to file the current *habeas* petition. These delays certainly do not show reasonable diligence on the part of petitioner. *See, e.g., Dixon v. Conway,* 613 F. Supp. 2d 330 (W.D.N.Y. 2009) (finding that petitioner did not act with reasonable diligence when, after his conviction became final, he waited roughly two years to file his first state post-conviction motion); *Howze v. Don,* 319 F. Supp. 2d 344 (W.D.N.Y. 2004) (finding that petitioner did not act with reasonable diligence when he failed to file an appeal and waited over two and one-half years to file a § 440.10 motion).

Thus, the circumstances here do not warrant equitable tolling of the one-year limitations period. Petitioner's *habeas* petition is untimely under the AEDPA and should be dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that this petition be **DISMISSED**.

## <u>NOTICE</u>

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United State Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

16

Dated: May 2.0, 2011
White Plains, New York

                    Respectfully Submitted,


                    _____
                    Paul E. Davison
                    United States Magistrate Judge
                    Southern District of New York


A copy of the foregoing Report and Recommendation has been sent to the following:

        The Honorable Kenneth M. Karas
        United States District Court Judge
        300 Quarropas Street
        White Plains, New York 10601

        Octavio Hernandez, *pro se*
        DIN # 04-A-4515
        Riverview Correctional Facility
        P.O. Box 247
        Ogdensburg, New York 13669

        Bonnie Mae Mitzner
        The Sullivan County DA's Office
        414 Broadway, LHC Courthouse
        Monticello, New York 12701